IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CARD ISLE CORPORATION,      )
        Plaintiff,      )
                      )      Case No. 7:20-CV-00708
v.                      )
                      )
TARIQ FARID, et al.,      )      By:    Michael F. Urbanski
        Defendants.      )      Chief United States District Judge

## MEMORANDUM OPINION

This matter is before the court on defendant Tariq Farid's motion to dismiss for lack of personal jurisdiction, ECF No. 39, and defendants Tariq Farid, Edible Arrangements, LLC ("Edible"), and Netsolace, Inc.'s ("Netsolace") motion to dismiss for improper venue or, in the alternative, transfer of venue, ECF No. 37. For the reasons stated below, the court will **GRANT** the transfer of venue.

### I. Overview

Card Isle Corp. ("Card Isle") is a Blacksburg, Virginia, based business that provides online retailers with personalized greeting cards and greeting-related products and services through its coding systems and technological infrastructure. Am. Compl., ECF No. 36 at 1-2. Card Isle was approached by Edible, a business specializing in fresh fruit gifts and decorative fruit baskets, about a working relationship. Id. at 1, 4. In May 2019, Card Isle held a virtual meeting with Edible and was then invited to an in-person meeting to demonstrate its product in Atlanta, Georgia. Id. at 8. In advance of this in-person meeting, Card Isle entered into Non-Disclosure Agreements ("NDAs") with Edible and Netsolace. Id. Netsolace provides technological solutions, services, and infrastructure for Edible. Id. at 4. The NDAs protected

Card Isle's "Confidential Information" from unauthorized "use[], disclos[ure], reproduc[tion], summariz[ation], or distribut[ion]." Netsolace NDA, ECF No. 36-2, at 2. Furthermore, Card Isle's Confidential Information and software could not be "reverse engineer[ed], decompile[d], or disassemble[d]" nor could defendants "alter or delete any proprietary legends or marking on Confidential Information[.]" Id. The NDA also stipulates that Card Isle's Confidential Information may be used "for the sole purpose of evaluating certain products and/or services solely in connection with [Netsolace and Edible's] and [Card Isle's] potential business relationship." Id. Confidential Information:

> [I]ncludes, without limitation, any and all information in tangible and intangible form relating to and/or including Disclosing Party's released or unreleased software, know-how, inventions, techniques, processes, algorithms, software programs, schematics, designs, product plans, contracts, . . . the terms and conditions of any proposed (or actual) license agreement or other agreement concerning Disclosing Party products or services, negotiations, the marketing or promotion of any Disclosing Party products or services, and information received from others that Disclosing Party is obligated to treat as confidential.

Id. at 1.

The NDAs contain a forum-selection clause. In relevant part, the NDAs state:

> This Agreement and all claims whatsoever arising from the parties' relationship will be construed and governed by the laws of the State of Georgia . . . The parties hereto submit to the exclusive jurisdiction of the state and federal courts in Fulton County, Georgia as the sole forum for resolution of all disputes concerning the parties' rights or obligations under this Agreement or otherwise arising as a result of their relationship.

Id. at 3. Edible and Netsolace both have their principal place of business in Georgia. Am. Compl., at 3.

On May 30, 2019, Card Isle co-founders met Tariq Farid, founder of Edible and president of Netsolace, in North Carolina to further discuss a potential business relationship. Id. at 9-10. Farid is a Georgia citizen. Id. at 4. At the meeting, Farid insisted that Card Isle sell the business to Edible even though Card Isle stated it was not interested. Id. at 10. Despite this, the parties continued to work toward establishing a business relationship. Id. Thus, Card Isle gave Edible and Netsolace access to its proprietary technology and intellectual property in June 2019. Id.

Thereafter, on October 10, 2019, Card Isle entered into a Service Agreement ("SA") with Edible, which stated that Card Isle would provide Edible the necessary technology and infrastructure to sell Card Isle's products. Id. at 11. The SA also prohibited reverse engineering or otherwise attempting to discover or produce any derivative works of Card Isle's products. Id. at 12. Additionally, the SA became the "complete and exclusive" understanding of the parties and "supersede[d] and cancel[ed] all previous agreements . . . . relating to the subject matter of this Agreement[.]" Edible SA, ECF No. 36-4, at 5. From October 16, 2019, to May 18, 2020, over 70 Edible franchises sold Card Isle products in their stores, including stores in the Western District of Virginia. Am. Compl., at 13-14. Card Isle never signed an SA with Netsolace.

In January 2020, Card Isle and Edible amended their SA by adding an addendum to the agreement. Id. at 14. In March 2020, Edible tried to renegotiate the terms of the SA; however, Card Isle rejected Edible's proposals. Id. at 16-17. In response, Edible paused all business with Card Isle. Id. at 17. Then, on May 20, 2020, Edible terminated its business with Card Isle in violation of the SA. Id. at 18-19. Edible's termination of the SA ended Card Isle's

business with multiple Edible franchises, including stores located in the Western District of Virginia. Id. at 19.

In October 2020, Edible began selling its own reverse engineered greeting card products that were Card Isle replicas. Id. at 21-24. Edible then replaced all of Card Isle's products that it was selling with their own reverse engineered products. Id. at 24.

Card Isle raises four claims against defendants: (1) breach of contract against Edible; (2) misappropriation of trade secrets against all defendants in violation of Ga. Code Ann. § 10-1-760 et seq.; (3) misappropriation of trade secrets against all defendants in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.; and (4) copyright infringement against all defendants in violation of 17 U.S.C. § 101 et seq.

Defendant Farid moved to dismiss for lack of personal jurisdiction or, in the alternative, improper venue. ECF No. 21. Defendants Edible and Netsolace moved to dismiss for improper venue or, in the alternative, transfer of venue to the Northern District of Georgia pursuant to a forum-selection clause contained in the NDAs. ECF No. 17. Card Isle then amended its complaint. ECF No. 36. Thereafter, defendants renewed their motions to dismiss on the same grounds. ECF Nos. 37, 39.

Defendants argue that the forum-selection clause in the NDAs requires the court to transfer this case to the Northern District of Georgia, stating that the broad scope of the phrase "arising from the parties' relationship" encompasses plaintiff's current claims. ECF No. 45 at 4. Moreover, defendants allege that because Netsolace did not sign an SA, the forum-selection clause in the NDA must be enforced as to Netsolace. Id. at 5. Card Isle alleges that its claims against Netsolace do not stem from Netsolace's obligations under the NDA. Rather,

they are statutory claims. Pl. Sur-Reply Br., ECF No. 48, at 2. Card Isle contends the purpose of the NDA was to protect Card Isle's confidential information while Netsolace and Edible evaluated Card Isle's product, which was completed prior to the signing of Edible's SA. ECF No. 43 at 15. Thus, Card Isle asserts the NDAs are inapposite. The parties do not dispute the validity of the NDAs. Rather, only their applicability to the present dispute is at issue. At argument, the parties agreed that if the court finds the claims as to defendant Netsolace should be transferred, the entire case should follow. The court will address each argument in turn.

## II. Personal Jurisdiction

When a court considers "a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F. 3d 553, 558 (4th Cir. 2014) (citing Consulting Eng'rs Copr. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009)). In determining if a plaintiff has met this burden, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

Before exercising personal jurisdiction over a non-resident defendant, a court must find that two conditions are satisfied. First, the state's long-arm statute must authorize exercise of jurisdiction in the circumstances presented. Second, the exercise of jurisdiction must comport with Fourteenth Amendment due process standards. Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The Fourth Circuit has interpreted Virginia's long-arm statute, Virginia Code § 8.01 – 328.1, as being coextensive with the Due

Process Clause. <u>English & Smith v. Metzger</u>, 901 F.2d 36, 38 (4th Cir. 1990) (citing <u>Peanut</u>

<u>Corp. of Am. v. Hollywood Brands, Inc.</u>, 696 F.2d 311, 313 (4th Cir. 1982)). Because Virginia's

long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-

prong test collapses into a single inquiry when assessing personal jurisdiction in Virginia.

> Fairness is the touchstone of the jurisdictional inquiry, and the 'minimum contacts' test is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there. In the context of specific jurisdiction, the relevant conduct must have only such a connection with the forum state that it is fair for the defendant to defend itself in that state. We do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum.

<u>Tire Eng'g v. Shandong Linglong Rubber Co.</u>, 682 F.3d 292, 301 (4th Cir. 2012) (internal

quotations and citations omitted).

The question, then, is whether defendant has sufficient "minimum contacts with

[Virginia] such that the maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'" <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quoting

<u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)); <u>Edwards v. Schwartz</u>, 378 F. Supp. 3d 468, 488

(4th Cir. 2018). The "minimum contacts" test requires that defendants purposefully avail

themselves of the forum state. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).

This test aims to ensure defendants are not "hauled into a jurisdiction solely as a result of

random, fortuitous, or attenuated contacts," <u>id.</u>, and affords defendants protection "from

having to defend [themselves] in a forum where [they] should not have anticipated being

sued[,]"   Consulting Eng'rs, 561 F.3d at 277 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Card Isle bases its claim for jurisdiction on Farid's specific contacts with Virginia.  In assessing specific jurisdiction, courts employ a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with the requirements of due process.  Courts evaluate "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351-52 (4th Cir. 2020); Universal Leather, 773 F.3d at 559 (quoting Tire Eng'g, 682 F.3d at 301-02).

The first part of the test — purposeful availment — embodies International Shoe's minimum contacts requirement. The purposeful availment inquiry is grounded on the traditional due process concept of minimum contacts, which itself is based on the premise that "a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Tire Eng'g, 682 F.3d at 301 (citation and internal quotation marks omitted); see Int'l Shoe Co., 326 U.S. at 320 (examining whether the defendant has "establish[ed] sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which [the defendant] has incurred there").  Thus, in determining whether a foreign defendant has purposefully availed itself of the privilege of conducting business in a forum state, courts look to whether "the

defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989) (quoting World–Wide Volkswagen, 444 U.S. at 297) (internal quotation marks omitted).

The purposeful availment analysis is a flexible one and depends on several factors that courts consider on a case-by-case basis. In the business context, those factors include, but are not limited to, an evaluation of:

1) whether the defendant maintains offices or agents in the forum state;
2) whether the defendant owns property in the forum state;
3) whether the defendant reached into the State to solicit or initiate business;
4) whether the defendant deliberately engaged in significant or long-term business activities in the State;
5) whether a choice of law clause selects the law of the State;
6) whether the defendant made in-person contact with a resident of the State regarding the business relationship;
7) whether the relevant contracts required performance of duties in the State; and
8) the nature, quality, and extent of the parties' communications about the business being transacted.

Sneha Media & Entn't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 198-99 (4th Cir. 2018).

The second part of the test determines whether the acts of Farid giving rise to the suit were directed at Virginia. The third part of the minimum contacts test is whether the exercise of personal jurisdiction is constitutionally reasonable. Courts employ five factors to determine if exercising personal jurisdiction is constitutionally reasonable: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate

judicial system's interest in obtaining the most efficient resolution of controversies; (5) the shared interest of the several States in furthering fundamental substantive social policies. Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987) (citing Worldwide Volkswagen, 444 U.S. at 292).

Farid argues that none of the eight Sneha Media factors weigh in favor of personal jurisdiction. ECF No. 40 at 7-8. He alleges that (1) he maintained no offices in Virginia; (2) he maintained no property in Virginia; (3) he "did not 'reach'[] into the State to solicit or initiate business[]"; (4) he did not engage in significant or long-term business in Virginia; (5) all contracts have selected Georgia law as the applicable law; (6) his only "in-person contact" occurred in North Carolina; (7) there are no allegations of relevant conduct that occurred in Virginia; and (8) he did not communicate with plaintiff other than the one meeting in North Carolina. Id. at 7-9.

Card Isle makes several arguments as to why Farid is subject to personal jurisdiction. First, it claims that, under Farid's direction, Edible stores sold Card Isle products and then sold copied versions of Card Isle products in stores in Virginia. Second, Farid did make in-person contact with Card Isle executives, Virginia residents, to conduct business. And third, Farid and Edible, under the direction of Farid, communicated with Card Isle through emails and phone calls for more than one year regarding their business.

Card Isle makes several claims about Farid directing Edible's misappropriation but alleges insufficient facts to support this assertion. The Fourth Circuit has stated that for the purposes of establishing personal jurisdiction, mere allegations of conspiracy or directing wrongdoing must be backed by "a threshold showing that a conspiracy existed and that the

defendants participated therein." Lolavar v. de Santibanes, 430 F.3d 221, 229 (4th Cir. 2005); McLaughlin v. McPhail, 707 F.2d 800, 807 (4th Cir. 1983); Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 232 (4th Cir. 2019) (finding no personal jurisdiction when plaintiff "identified no suit-related forum contacts apart from their allegation of aiding-and-abetting"). The allegation that Farid cut short the North Carolina in-person meeting after Card Isle refused to sell him the business is not enough to establish direction on behalf of Farid. There are no facts alleged to support the inferential leap that because Farid could not get Card Isle to sell their business, he later on directed Edible to misappropriate Card Isle's proprietary information and sell the reverse engineered products in stores located in this district. In fact, one of the cases Card Isle cites in support of personal jurisdiction articulates that more than a mere allegation is necessary. Bright Imperial states:

> [M]erely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

Bright Imperial Ltd. v. RT MediaSolutions, S.R.O., No. 1:11-cv-935-LO-TRJ, 2012 WL 1831536, at *11 (E.D. Va. May 18, 2012) (citing Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir. 1980)). Here, Card Isle does not point to any specific facts that allege Farid directed or participated in Edible's misappropriation of Card Isle intellectual property. Because Card Isle cannot prove the first prong of the minimum contacts test, the court need not consider the remaining two elements.

Moreover, the crux of Card Isle's claim alleges that Farid misappropriated Card Isle's products and sold copied versions in Virginia stores. To the extent that Card Isle asserts personal jurisdiction over Farid simply in his capacity as a corporate agent, the assertion must fail. The Fourth Circuit foreclosed this argument, stating:

> [I]f the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally.

Columbia Briargate Co. v. First Nat'l Bank, 713 F.2d 1052, 1064-65 (4th Cir. 1983). As such, the court has no personal jurisdiction over Farid.

### III. Improper Venue

Venue is generally governed by 28 U.S.C. § 1391. The statute states that:

> A civil action may be brought in-- (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 571 U.S. 49, 55-56 (2013). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." Id. at 56. For this analysis, it is immaterial whether the parties have entered into a forum-selection clause. Id.; see also Mitra v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) ("To survive a motion to dismiss

for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue."). Therefore, as long as the requirements of § 1391(b) are met, venue is proper. Id. at 57; see also Van Dusen v. Barrack, 376 U.S. 612, 618 (1964).

The Amended Complaint alleges sufficient facts to show that venue is proper in this district. It alleges that Card Isle is headquartered in Blacksburg, Virginia, Am. Compl., at 3-4, met with the defendants from Blacksburg, id. at 8, and created the proprietary technology in Blacksburg, id. at 9-10. Card Isle negotiated, performed, and executed the contract in Blacksburg, Virginia. Id. at 11-12. Edible began showing a trial version of Card Isle's product in Virginia stores. Id. at 9. Additionally, once Card Isle's contract with Edible was terminated, Edible began selling a copied version of Card Isle's product in Virginia stores, causing Card Isle to lose business. Id. at 20, 24, 27.

Defendants argue that Card Isle cannot prove venue based on its own actions; however, the Fourth Circuit disagrees. See Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004) ("depending on the amount of work that [plaintiff] completed in the Eastern District, that work alone may be sufficient to justify venue there."). The plaintiff in Mitrano was an attorney who did work for an out-of-state client in Virginia. Id. at 404. Plaintiff brought a breach of contract claim against the client in federal court in Virginia, and the client moved to dismiss for improper venue. Id. The district court found venue in Virginia to be improper because "(1) the contract was formed in Massachusetts; (2) the negotiations leading to the formation of the contract were held in Massachusetts; (3) the contract contemplated that services would be performed in Massachusetts or France; (4) actual performance of the contract occurred, in part, in Massachusetts; and (5) the alleged breach of the contract (failure to make payments)

took place in Massachusetts." Id. The Fourth Circuit reversed, concluding that "[plaintiff]'s work under the contract constituted a substantial part of the events [and] omissions giving rise to [plaintiff's] claim for breach of contract.") (internal quotation marks omitted). Id. at 405-06.

Defendants argue that Mitrano should be construed narrowly and viewed as an exception to the general rule that Card Isle's actions, alone, cannot establish venue. ECF No. 38 at 8-10. The court finds the Fourth Circuit holding in Mitrano to be applicable here. All of Card Isle's actions occurred in Virginia. Edible has several stores located in the district and Card Isle products were sold there; Card Isle is headquartered in Virginia; and performance of Edible and Card Isle's contract occurred in Virginia. Unlike Mitrano, where only some work was performed in Virginia, all of Card Isle's contract performance was performed in Virginia. Card Isle alleges that it "(1) develop[ed] the proprietary technology and products for Edible (from its headquarters in this District); (2) deploy[ed] its products to Edible franchises (operating in this District); and (3) continu[ed] to service those products and franchises (from its headquarters in this District)." ECF No. 43 at 10-11. Because Card Isle performed and sustained damaged in this district, the court finds that venue is proper under the Mitrano rationale. Having determined that venue is proper, the court must now address whether the forum-selection clauses contained in the NDAs require transfer of this case to Georgia.

**IV. Transfer of Venue**

A case may be transferred to another district under 28 U.S.C. § 1404(a). Atlantic Marine, 571 U.S. 49, 59 (2013). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge." Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1257 (4th Cir. 1991). In deciding whether to transfer venue, the traditional § 1404(a) framework requires the court to consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. Of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). However, in the presence of a forum-selection clause, courts should generally weigh in favor of transferring. Brock, 933 F.2d at 1257 (stating that forum-selection clauses must be given "'controlling weight in all but the most exceptional cases.'") (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 33 (1988)); Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 649 (4th Cir. 2010) ("[A]s a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable.").

There are two types of forum-selection clauses: mandatory and permissive. See Melo v. Zumper, Inc., 439 F. Supp. 3d 683, 700 (E.D. Va. 2020). A mandatory clause "requires litigation to occur in a specified forum," while "a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." Vault, LLC v. Dell Inc., No. 1:18-

14

CV-633, 2019 WL 113726, at *3 (M.D.N.C. Jan. 4, 2019). Forum-selection clauses containing the word "exclusive" are mandatory. Id. (citing BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 472 (4th Cir. 2018)). Here, the parties agreed to a mandatory forum-selection clause in the NDAs, subjecting themselves to the "exclusive jurisdiction" of the state and federal courts in Fulton County, Georgia.

Mandatory forum-selection clauses shift the traditional § 1404(a) framework. BAE Sys., 884 F.3d at 470-71. Under the modified framework, (1) the party opposing the agreement has the "burden of establishing that transfer to the forum for which the parties bargained is unwarranted[]"; (2) "courts should not consider arguments about the parties' private interests[]"; and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ." Atlantic Marine, 571 U.S. at 63-64.

Such forum-selection clauses are presumed "valid and [to] be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances[.]'" WCC Cable, Inc. v. G4S Tech. LLC, No. 5:17-CV-52, 2017 WL 6503142, at *6 (W.D. Va. Dec. 15, 2017) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1,10 (1972)). "This is because 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" Id. (quoting Stewart Org., 487 U.S. at 33). A valid forum-selection clause may become invalid if it is unreasonable. WCC Cable, 2017 WL 650342, at *6. The Fourth Circuit has articulated that a forum-selection clause is unreasonable if:

> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of

his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

Id. at *6 (citing Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)). As the parties do not dispute the validity of the forum-selection clauses, the court's task is limited to determining whether the clauses apply here.

**A. Applicability of Forum-Selection Clause as to Netsolace**

As to Netsolace, the crux of Card Isle's argument is that its statutory claims do not "arise from" the NDA or the relationship created by the NDA, arguing instead that its claims fall outside the scope of the forum-selection clause. Card Isle's argument ignores the broad scope of the forum-selection clause it agreed to in the NDA. Not only did Card Isle agree to the Fulton County, Georgia forum for "all disputes concerning the parties' rights or obligations under this Agreement," it agreed to have that forum resolve all disputes "otherwise arising as a result of their relationship." Netsolace NDA, at 3.

Courts use general principles of contract interpretation to analyze a forum-selection clause's applicability. Kentwool Company v. NetSuite, Inc., No. 6:14-CV-02678, 2014 WL 12681605, at *5 (D.S.C. Dec. 1, 2014) (quoting Martin v. Ball, 326 F. App'x 191, 194 (4th Cir. 2009)). To determine the scope of a forum-selection clause, courts "'look[] to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses.'" Brooks-Williams v. Keybank, National Ass'n, No. WDQ-15-559, 2015 WL 92553327, at *5 (D. Md. Dec. 17, 2015) (quoting NC Contracting, Inc. v. Munlake Contractors, Inc., No. 5:11-CV-766-FL, at *6 (E.D.N.C. Oct. 25, 2012)); see Samirah v. District Smiles,

PLLC, No. 20-CV-03076, 2021 WL 918082, at *2 (D.D.C. Mar. 10, 2021) ("[C]ourts look at the substance of the claims as they relate to the language of the clause to determine whether a claim is covered by a forum selection clause." (quoting Cheney v. IPD Analytics, LLC, 583 F. Supp. 2d 108, 125 (D.D.C. 2008))). However, courts must look further than the language given to the claims by the parties and "examine the substance of [the] claims shorn of their labels[.]" Beall v. Edwards Lifesciences LLC, 310 F. Supp. 3d 97, 101 (D.D.C. 2018) (quoting Cheney, 583 F. Supp. 3d at 122).

Card Isle argues that its claims are statutory in nature and do not invoke the forum-selection clause found in the NDA it signed with Netsolace. As the purpose of the NDA was to protect its confidential information prior to the parties' in-person meeting with defendants and during the period Card Isle's services were being evaluated, Card Isle argues that the forum-selection clause is inapplicable to its present claims. Card Isle asserts that once this process was complete, the NDA became inoperable. The court cannot agree.

First, plaintiff attaches and incorporates its NDA with Netsolace to both the original and Amended Complaint. Second, in its original Complaint, Card Isle alleged that the NDA was binding and enforceable. ECF No. 1 at 2. Only after the defendants requested a transfer of venue pursuant to the forum-selection clause in the NDA, this allegation was removed in the Amended Complaint. Third, in its breach of contract claim against Edible Arrangements, Card Isle asserts that Netsolace, either directly or indirectly, assisted Edible Arrangements in "reverse engineering, decompiling, disassembling, or otherwise attempting to discover the source code" of Card Isle's confidential information. Am. Compl., at 25. These are the very things that the NDA prevented Netsolace from doing. See Netsolace NDA, at 2. Fourth, in

its Amended Complaint, plaintiff alleges that Netsolace "knowingly acquired Card Isle's trade secret information by improper means, including breach of a confidential relationship or other duty to maintain secrecy or limit use as set forth in confidentiality agreements." Id. at 28. The sole agreement between Card Isle and Netsolace was the NDA, and the NDA contained terms detailing how Card Isle's confidential information should be handled. Netsolace NDA, at 1-2. Card Isle's allegations of reverse engineering are expressly covered by the NDA. Although plaintiff argues its claims are statutory, the broadly worded NDA plainly encompasses the claims raised by Card Isle.

Card Isle relies on two cases to oppose transfer, neither of which withstand scrutiny. In EarthKind, LLC v. Lebermuth Company Inc., No. 5:19-CV-51-KDB-DCK, 2020 WL 1815903 (W.D.N.C. Apr. 9, 2020), EarthKind, a North Carolina manufacturer of natural, plant-based pest control products, sued Lebermuth, an Indiana organic essential oil supplier, for breach of contract, breach of warranty, and related tort claims arising from Lebermuth's supply of fresh cab oil. Lebermuth filed a counterclaim and brought a third-party claim against EarthKind's CEO, Kari Block, alleging breach of a confidentiality agreement. Because the confidentiality agreement contained a forum-selection clause, specifying the Northern District of Indiana, Lebermuth moved to dismiss or transfer the case there. The court disagreed, finding that EarthKind's claims did not arise out of the confidentiality agreement. Furthermore, the court noted that Lebermuth, the party seeking to transfer the case under the forum-selection clause of the confidentiality agreement, was not a party to that agreement. Here in contrast, the claims against Netsolace relate directly to the NDA, and Card Isle was a party to the NDA with Netsolace.

18

In <u>Yevak v. Nilfisk-Advance, Inc.</u>, No. 5:15-CV-05709, 2016 WL 538333 (E.D. Pa. Feb. 11, 2016), an employee signed an employment agreement, which contained a forum-selection clause, to "protect the Company's Confidential Information, business relationships, and competitive advantage." Yevak sued his employer, alleging violations of federal employment discrimination statutes. Finding that Yevak's claims were not related to the employment agreement, the court declined to extend a forum-selection clause to claims wholly distinct from it. Unlike the claims brought by the plaintiff in <u>Yevak</u>, Card Isle's claims are closely related to the terms of the NDA. As such, this case does not support Card Isle's position.

Additionally, Card Isle asserts that defendants' reading of the forum-selection clause is too expansive. Card Isle states that under the defendants' view, a theoretical personal injury suit between the parties would also be governed by the clause because it "arises as a result of" the parties' relationship. <u>See</u> Pl. Sur-Reply Br., ECF No. 48, at 2. However, Card Isle's straw man argument is inapposite. The claims here concern the misuse of confidential information covered by the NDA and involve the same or similar operative facts. As such, Card Isle's hypothetical bears no relation to the allegations of this case.

Next, Card Isle argues that the NDA essentially expired after Netsolace finished evaluating plaintiff's services. However, forum-selection clause may still be applicable even if a contract has expired. <u>U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd.</u>, 612 F. App'x 671, 672-73 (4th Cir. 2015) ("Generally, dispute-resolution provisions, such as forum-selection clauses, are enforceable beyond the expiration of the contract if they are otherwise applicable to the disputed issue and the parties have not agreed otherwise.").

Nothing in the record of this case suggests that the forum-selection clause in the Netsolace NDA was terminated.

The parties also agreed that Georgia law would govern the Netsolace NDA. In the Eleventh Circuit, forum-selection clauses are construed liberally to generally include non-contractual claims as long as those claims "developed from the parties' business relationship." American Spirit and Cheer Essentials, Inc. v. Varsity Brands, LLC, No. 1:20-CV-03088-SCJ, 2020 WL 8115878, at *9 (N.D. Ga. Oct. 27, 2020); NeoMedia Techs., Inc. v. ScanBuy, Inc., No. 1:14-CV-01379-AT, 2014 WL 12323686, at *4 (N.D. Ga. Oct. 31, 2014) ("Although the breadth of a forum selection clause's application depends on the clause's particular wording, such clauses are construed liberally."). Moreover, courts in the Eleventh Circuit "look to the weight of authority in [that circuit] stating that a claim emanating from the business relationship governed by the contract at issue can be subject to that contract's forum selection clause." American Spirit, 2020 WL 8115878, at *16. Plainly, as plaintiff's statutory claims stem from the parties' business relationship, they are subject to the forum-selection clause, which requires this case be transferred to the Northern District of Georgia.

## B. Applicability of Forum-Selection Clause as to Edible

As explained above, the court does not have personal jurisdiction over defendant Farid, and the forum-selection clause in Card Isle's NDA with Netsolace requires transfer to the Northern District of Georgia where the case can be litigated against all of the defendants. Accordingly, the court will transfer the case to the Northern District of Georgia.

As such, the court need not reach the question whether the subsequent SA between Card Isle and Edible supersedes the forum-selection provision of the Card Isle NDA with Edible.

## V. Conclusion

For the foregoing reasons, the court **GRANTS** the motion to transfer venue to the Northern District of Georgia. Because the court finds transfer to be applicable, defendant Farid's motion to dismiss for lack of personal jurisdiction is **DENIED as moot**.

An appropriate order will be entered.

Entered: May 7, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.05.07 16:28:39 -04'00'

Michael F. Urbanski
Chief United States District Judge

21